UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARL A. PEACH,

                        Plaintiff,

    v.                                                    **DECISION AND ORDER**
                                                                  15-CV-104S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

1. Plaintiff Carl A. Peach challenges an Administrative Law Judge's ("ALJ") decision dated August 14, 2013, wherein the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act"). Plaintiff now contends that this determination is not based upon substantial evidence, and remand is warranted.

2. Plaintiff filed an application for disability insurance benefits under Title II of the Act on September 29, 2011, alleging a disability beginning on December 30, 2010. The claim was initially denied on January 17, 2012. Plaintiff thereafter requested a hearing before an ALJ and, on May 28, 2013, Plaintiff appeared in Buffalo and testified by videoconference with an ALJ presiding from Jamaica, NY. The ALJ subsequently found on August 14, 2013, that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request for review on January 27, 2015, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on February 5, 2015.

3. Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6, 12). Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2010.  (R. 21.)[1]  He then made the following findings with regard to the five-step process set forth above:  (1) Plaintiff had not engaged in substantial gainful activity since December 30, 2010, the alleged date on which Plaintiff became disabled (R. 22); (2) Plaintiff's severe impairments include substance addiction disorder (prior to May 1, 2011) and severe degenerative osteoarthritis of the right hip, status-post right hip replacement (as of May 1, 2011) (id.); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment listed in Appendix 1 of the regulations (the "Listings") (R. 22-23); (4) (a) prior to May 1, 2011, Plaintiff had the residual functional capacity ("RFC") for a full range of work, with certain nonexertional limitations[2] due to substance addiction disorder, and these nonexertional limitations

---

[1] Citations to the underlying administrative record are designated as "R."
[2] The ALJ found that Plaintiff was limited to work "(1) not involving even simple, repetitive tasks; (2) not involving even limited concentration; and (3) involving no more than occasional interaction with supervisors, co-workers or the public."  (R. 23.)

precluded Plaintiff from performing any past relevant work (R. 23-24); (b) as of May 1, 2011, Plaintiff had an RFC for a full range of sedentary work[3] (R. 28); and (5) (a) prior to May 1, 2011, a finding of "disabled" would be dictated by Plaintiff's RFC, however, because the substance addiction disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled within the meaning of the Social Security Act (R. 25-27); (b) as of May 1, 2011, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 31).

10.   Plaintiff advances six challenges to the ALJ's decision, the first of which is persuasive. Plaintiff argues that the ALJ failed to properly consider the medical Listings, and that, had he properly done so, the five-step sequential analysis should have stopped at step three with a finding that Plaintiff is disabled under either medical listing 1.02 (major dysfunction of a joint) or 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint).

The third step in the sequential analysis requires the ALJ to consider whether Plaintiff's symptoms meet the criteria of any Listing. It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se* and eligible to receive benefits. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Listing 1.02 requires: "(1) gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability), and (2) chronic joint pain and stiffness (3) with signs of limitation of motion or other abnormal motion of the

---

[3] The ALJ failed to make a finding as to whether Plaintiff could perform any past relevant work as of May 1, 2011.

5

affected joint(s), and (4) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) . . . [w]ith . . . (5) [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), (6) resulting in inability to ambulate effectively." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02 (numbering not in original). Listing 1.03 requires: "(1) [r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, (2) with inability to ambulate effectively, . . . and (3) return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.03 (numbering not in original). An "inability to ambulate effectively" has been defined as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."[4]  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1).

The ALJ stated that Plaintiff did not meet these listings, but provided no explanation as to how he made that decision. Instead, the decision simply restates the required elements of the listings as set forth above, concluding: "The claimant's impairment does not meet these conditions." (R. 22.) But Plaintiff's complaints, coupled with supporting medical evidence, suggest symptoms that might meet either

---

[4] The regulations further explain:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living [and] . . . must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2).

Listing 1.02 or Listing 1.03. For example, with respect to the first element of Listing 1.02 (requiring a "gross anatomical deformity"), Plaintiff's May 9, 2011 hip x-ray showed "partial erosion" of the femoral head (R. 228) and his November 2, 2011 x-ray showed a "significant deformity involving the right femoral head as well as the right acetabulum" (R. 259). As to the second element (requiring chronic joint pain and stiffness), Plaintiff testified that problems with his right hip made it difficult for him to sit or stand for long, and that he continued to have sharp, shooting, tingling pain in his right hip and up and down his right leg in spite of his recent hip surgery. (R. 47.) Plaintiff's treating physician, Dr. Redhead, also noted that Plaintiff had joint stiffness and right hip pain. (R. 344.) As to the third element (requiring limitation of motion or other abnormal motion of the affected joint), Dr. Miller, a consulting physician, noted significant limitation of motion of the right hip. (R. 273.) As to the fourth element (requiring medical findings of joint space narrowing, bony destruction, or ankylosis of the affected joint), the November 2011 hip x-ray also showed significant osteoarthritic degenerative changes, including joint space narrowing. (R. 259.) The fifth element (requiring that the joint involved be weight-bearing) expressly includes the hip. Finally, as to the sixth element (requiring that the condition impact the ability to ambulate effectively), both Dr. Redhead and Ms. Mellas, a nurse practitioner, opined that Plaintiff was unable to walk more than a block at a reasonable pace on rough or uneven surfaces, which meets the statutory definition in the Listings. (R. 314-15, 324.) As to the first element of Listing 1.03 (requiring that a claimant has had reconstructive surgery of a major weight-bearing joint), there is no dispute that Plaintiff had total hip arthroplasty surgery on March 26, 2012. (R. 321.) The second and third elements of 1.03 require that the inability to

ambulate effectively (addressed above) did not return post-surgery or is not expected to return for twelve months, a proposition that is supported by the opinion of nurse practitioner Ms. Mellas. (R. 324.) The evidence in the record suggests that Plaintiff has a colorable case for application of either of these Listings, yet the ALJ did not analyze these symptoms and evidence in the context of the Listing criteria.

"When a claimant's symptoms appear to match those described in a listing, 'the ALJ must explain a finding of ineligibility based on the Listings.'" Torres v. Colvin, No. 14-CV-479S, 2015 WL 4604000, at *3-5 (W.D.N.Y. July 30, 2015) (quoting Booker v. Heckler, No. 83 Civ. 5300, 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984)). The ALJ can use one of two approaches. First, the ALJ can "compar[e] . . . the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairments." Easley v. Colvin, No. 13-CV-923S, 2014 WL 5465411, at *3 (W.D.N.Y. Oct. 28, 2014) (citing Hamedallah v. Astrue, 876 F. Supp. 2d 133, 142 (W.D.N.Y. 2012)). Second, if the ALJ chooses not to conduct this comparison, the ALJ must "expressly adopt a medical source statement that discusses the medical evidence and arrives at express conclusions concerning the Listings." Easley, 2014 WL 5465411, at *3 (citing Booker, 1984 WL 622, at *3). Here, the ALJ did neither.

Although an ALJ is not obligated to specifically address each piece of evidence in his or her decision, Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), the ALJ must address key issues with sufficient specificity to allow for review, Davis v. Astrue, No. 6:09-CV-186 (LEK/GHL), 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010) (citations omitted) (citing Ferraris, 728 F.2d at 587-88). Indeed, "the Second Circuit

explicitly requires an ALJ to set forth his or her decision in such a manner so as to 'enable [reviewing courts] to decide whether the determination is supported by substantial evidence.'" Szarowicz v. Astrue, No. 11-CV-277S, 2012 WL 3095798, at *8-*10 (W.D.N.Y. July 30, 2012) (alteration in original) (quoting Davis, 2010 WL 2545961, at *3). While the ALJ may ultimately find that these listings do not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria. Cherico v. Colvin, No. 12 CIV. 5734 MHD, 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (ALJ's failure to apply the criteria for a Listing to the medical evidence and make specific findings was "patently inadequate . . . in view of the fact that plaintiff has at least a colorable case for application of" the Listing).

Although the record evidence suggests that Plaintiff's symptoms could meet the criteria of 1.02 or 1.03, this Court cannot determine whether the ALJ properly considered the Listings because his only reference to them is a recitation of the standard. (R. at 22.) If the ALJ did not consider the Listings, the case must be remanded for further consideration. If he did, the case must still be remanded because his decision lacks a meaningful discussion of the Listings, which leaves this Court unable to assess whether the ALJ's decision is supported by substantial evidence. Accordingly, this case must be remanded for further consideration and determination of whether Plaintiff meets the Listing at 1.02 or 1.03. See Kovacevic v. Chater, No. 94-CV-600S, 1995 WL 866425, at *8-*9 (W.D.N.Y. Sept. 29, 1995) ("In the absence of a detailed comparison of plaintiff's impairment with the [Listing] . . . , or an explanation as to why plaintiff's impairment did not meet or equal any identified listing in Appendix 1, this court cannot accept the ALJ's conclusions.") (citing Booker, 1984 WL 622, at *3);

Szarowicz, 2012 WL 3095798, at *5 (a "case will be remanded if the court determines that the plaintiff was owed a more substantive discussion of *why* he did not meet a particular Listing") (internal quotation and punctuation omitted, emphasis in original).

11. In addition to challenging the ALJ's consideration of the Listings, Plaintiff argues that (1) the ALJ did not properly evaluate the opinion of treating physician Dr. Redhead; (2) the ALJ erred in failing to properly evaluate the "other source" opinion of nurse practitioner Ms. Mellas; (3) the RFC is arbitrary and not based on substantial evidence; (4) the ALJ failed to fully and properly assess Plaintiff's credibility; and (5) the ALJ erred in failing to consider a closed period of disability.  The ALJ is directed to consider these additional arguments on remand.

12. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.  Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED;

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: May 23, 2016
      Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge